## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

ABBOTT LABORATORIES,

                Plaintiff,

        v.

REVITALYTE LLC,

                Defendant.

Case No. 0:23-cv-01449 (DWF/DTS)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT REVITALYTE LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

**TABLE OF CONTENTS**

FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 1

    A.    Abbott and its Pedialyte Products ...................................................... 1

    B.    Revitalyte and its REVITALYTE-branded Products ................................. 4

    C.    This Litigation ...................................................................... 6

ARGUMENT ....................................................................................... 7

I.    Abbott's Trade Dress Infringement and Dilution Claims Fail. ...................... 8

    A.    The Pedialyte Trade Dress is Functional and Thus Invalid. ..................... 9

    B.    Abbott Has Pleaded Itself Out of Court on Its Trade Dress Dilution Claim. ...................................................................................... 19

II.    Abbott's Claims Based on "Compare to Pedialyte" Fail as a Matter of Law. ........ 20

    A.    Abbott's Trademark Infringement and False Designation of Origin Claims Fail as a Matter of Law. ........................................... 21

    B.    Abbott's Trademark Dilution Claim Fails as a Matter of Law. ................. 25

III.    Abbott's Trademark Claims Based on a Handful of Other References to "Pedialyte" Likewise Fail. ....................................................... 27

IV.    Because Abbott's Claim for Violation of the Minnesota Deceptive Practices Act Depend Upon Its Federal Claims, the Court Should Dismiss It. ................. 28

CONCLUSION ................................................................................... 29

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allied Interstate LLC v. Kimmel & Silverman P.C.*,
  Case No. 12cv4204, 2013 U.S. Dist. LEXIS 113465 (S.D.N.Y. Aug. 12,
  2013) ............................................................................................................ 26

*Am. Home Prods. v. Barr Labs*,
  656 F. Supp. 1058 (D.N.J 1987) ................................................................ 24

*Anderson v. Kimberly-Clark Corp.*,
  570 F. App'x 927. (Fed. Cir. 2014) ............................................................ 11

*Applied Underwriters, Inc. v. Lichtenegger*,
  913 F.3d 884 (9th Cir. 2019) ...................................................................... 23

*Aromatique, Inc. v. Gold Seal, Inc.*,
  28 F.3d 863 (8th Cir. 1994) ........................................................................ 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2008) ...................................................................................... 8

*ASICS Corp. v. Target Corp.*,
  282 F. Supp. 2d 1020 (D. Minn. 2003) ...................................................... 13

*Beachbody, LLC v. Universal Nutrients, LLC*,
  119 U.S.P.Q.2d 1734 (C.D. Cal. 2016) ...................................................... 23

*In re Becton, Dickinson and Co.*,
  675 F.3d 1368 (Fed. Cir. 2012) .................................................................. 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 8

*Cairns v. Franklin Mint Co.*,
  292 F.3d 1139 (9th Cir. 2002) .................................................................... 22

*Conopco, Inc. v. May Dep't Stores Co.*,
  46 F.3d 1556 (Fed. Cir. 1994) .................................................................... 24

*Crafty Prods. v. Fuqing Sanxing Crafts Co.*,
  839 F. App'x 95 (9th Cir. 2020) ................................................................ 17

*CTB, Inc. v. Hog Slat, Inc.*,
  954 F.3d 647 (4th Cir. 2020) ................................................................ 15, 17

*Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*,
  369 F.3d 1197 (11th Cir. 2004) .................................................................. 17

*Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*,
  158 F.3d 1002 (9th Cir. 1998) .................................................................... 17

## TABLE OF AUTHORITIES

(continued)

**Page(s)**

*Duluth News-Tribune v. Mesabi Publ'g Co.*,
    84 F.3d 1093 (8th Cir. 1996) ...................................................................... 21, 24

*E-Z Dock, Inc. v. Snap Dock, LLC*,
    Case No. 2:21cv450, 2022 U.S. Dist. LEXIS 163199 (M.D. Fl. Sept. 9,
    2022) ................................................................................................................. 19

*Eliya, Inc. v. Steven Madden, Ltd.*,
    749 F. App'x 43 (2d Cir. 2018) ...................................................................... 17

*Flexible Steel Lacing Company v. Conveyor Accessories, Inc.*,
    955 F.3d 632 (7th Cir. 2020) .......................................................................... 11

*Georgia-Pacific Consumer Prods. LP v. Kimberly-Clark Corp.*,
    647 F.3d 723 (7th Cir. 2011) .......................................................................... 16

*Groeneveld Transp. Efficiency, Inc. v Lubecore Int'l, Inc.*,
    730 F.3d 494 (6th Cir. 2013) .......................................................................... 15

*H&R Block, Inc. v. Block, Inc.*,
    58 F.4th 939 (8th Cir. 2023) ........................................................................... 27

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*,
    456 U.S. 844 (1982) ........................................................................................ 15

*Jack Daniel's Props. v. VIP Prods. LLC*,
    143 S. Ct. 1578 (2023) .................................................................................... 25

*Leatherman Tool Group, Inc.* v. *Cooper Industries*,
    199 F.3d 1009 (9th Cir. 1999) ........................................................................ 19

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co.*,
    170 F. Supp. 3d 1249 (C.D. Cal. 2016) .......................................................... 26

*Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*,
    292 F. Supp. 2d 535 (S.D.N.Y. 2003) .............................................................. 9

*Mktg. Displays, Inc. v. TrafFix, Inc.*,
    200 F.3d 929 (6th Cir. 1999) .......................................................................... 14

*Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*,
    671 F.3d 526 (5th Cir. 2012) .......................................................................... 25

*Nat'l Lighting Co. v. Bridge Metal Industries, LLC*,
    601 F. Supp. 556 (S.D.N.Y. 2009) ................................................................... 9

*New Kids on the Block v. News Am. Publ'g, Inc.*,
    971 F.2d 302 (9th Cir. 1992) ..................................................................... 22, 23

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Ortiz v. Ferrellgas Partners, L.P. (In re Pre-Filled Propane Antitrust Litig.)*,
  893 F.3d 1047 (8th Cir. 2018) ..................................................................... 8

*Pellegrino v. Epic Games, Inc.*,
  451 F. Supp. 373 (E.D. Pa. 2020) ............................................................. 26

*Pocket Plus, LLC v. Pike Brands, LLC*,
  53 F.4th 425 (8th Cir. 2022) ................................................................. 9, 15

*Porous Media Corp. v. Pall Corp.*,
  186 F.3d 1077 (8th Cir. 1999) .............................................................. 3, 24

*Qualitex Co. v. Jacobson Prods. Co.*,
  514 U.S. 159 (1995) ............................................................................. 10, 15

*Rainbow Play Sys. v. GroundScape Techs., LLC*,
  364 F. Supp. 2d 1026 (D. Minn. 2005) ..................................................... 29

*Schutte Bagclosures, Inc., v. Kwik Lok Corp.*,
  193 F. Supp. 3d 245 (S.D.N.Y. 2016), *aff'd*, 699 F. App'x 93 (2d Cir. 2017) ......................................................................................................... 13

*Sensient Techs. Corp. v. SensoryEffects Flavor Co.*,
  613 F.3d 754 (8th Cir. 2010) .................................................................... 21

*Talking Rain Bev. Co. v. S. Beach Bev. Co.*,
  349 F.3d 601 (9th Cir. 2003) ............................................................... 16, 18

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
  532 U.S. 23 (2001) ............................................................................. *passim*

*Truenorth Cos., L.C. v. Trunorth Warranty Plans of N. Am. LLC*,
  292 F. Supp. 3d 864 (N.D. Iowa 2018) ..................................................... 20

*Vital Pharmaceuticals, Inc. v. Monster Energy Co.*,
  553 F. Supp. 3d 1180 (S.D. Fla. 2021) ..................................................... 18

*W.W.W. Pharm. Co. v. Gillette Co.*,
  984 F.2d 567 (2d Cir. 1993) ...................................................................... 28

*Weight Watchers Int'l, Inc. v. Noom, Inc.*,
  403 F. Supp. 3d 361 (S.D.N.Y. 2019) ................................................. 23, 28

*Zean v. Fairview Health Servs.*,
  858 F.3d 520 (8th Cir. 2017) .................................................................... 10

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Statutes**

15 U.S.C. § 1114 ..................................................................................................... 7, 21

15 U.S.C. § 1125 ..................................................................................................... 7, 21

15 U.S.C. § 1125(a) ...................................................................................................... 21

15 U.S.C. § 1125(a)(3) .................................................................................................. 10

15 U.S.C. § 1125(c)(1) .............................................................................................. 9, 19

15 U.S.C. § 1125(c)(2)(A) ............................................................................................ 20

15 U.S.C. § 1125(c)(2)(C) ......................................................................................... 9, 25

15 U.S.C. § 1125(c)(3)(A) ............................................................................................ 26

15 U.S.C. § 1125(c)(4)(A) ............................................................................................ 19

15 U.S.C. § 1125(c)(4)(B) ............................................................................................ 20

15 U.S.C. § 1127 .......................................................................................................... 25

35 U.S.C. § 101 ............................................................................................................ 11

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 17

Fed. R. Civ. P. 12(c) ...................................................................................................... 7

Defendant Revitalyte LLC submits this memorandum of law in support of its Motion for Judgment on the Pleadings.

Plaintiff Abbott Laboratories, the seller of Pedialyte products, accuses Revitalyte of a litany of Lanham Act violations. Stripped of histrionics, the flaws in Abbott's Amended Complaint become manifest. Abbott claims Revitalyte has infringed Abbott's purported and unregistered trade dress rights in a rectangular, plastic bottle with a wraparound label and shrink-wrapped cap. That trade dress, however, was the subject of an expired utility patent and thus functional and unprotectable as a matter of law. Abbott also contends that Revitalyte's use of "Compare to Pedialyte" on its bottle and other isolated references to Pedialyte infringe and tarnish Abbott's PEDIALYTE mark, but this usage is neither infringing nor dilutive as a matter of law.

While Abbott hopes to litigate an upstart competitor into oblivion, it must first state claims on which this Court may grant relief. Because Abbott fails to do so, the Court should dismiss the Amended Complaint and enter judgment for Revitalyte.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Abbott and its Pedialyte Products

Abbott sells "a broad portfolio" of health care-related products and generates billions of dollars in annual revenue. *See* Am. Compl. (Dkt. No. 22) ¶¶ 33, 34. One of Abbott's products is an oral electrolyte solution ("OES") to treat dehydration marketed and sold under the mark PEDIALYTE. *Id.* ¶¶ 1, 27. Abbott sells several lines of OES under that mark. *Id.* ¶ 41. Abbott's "Classic" Pedialyte comes in several flavors in one-liter bottles. *Id.* ¶¶ 41, 54. Pedialyte Advanced Care Plus includes prebiotics and 33% more

1

electrolytes than the Classic line and also comes in different flavors in one-liter bottles. *Id.*

Images of each of the products in these two lines are shown below (*id.* ¶¶ 54, 55):



*Pedialyte Classic*



*Pedialyte Advanced Care Plus*

There is a third Pedialyte line, Pedialyte Sport, which Abbott promotes as providing fast

rehydration and muscle support. *Id.* ¶ 93. Images of products from that line, also sold in

different flavors in one-liter bottles, are below (*id.*):



Abbott contends that its Pedialyte products dominate the ready-to-drink OES market in the United States, "commanding roughly 60 percent of dollar sales." *Id.* ¶ 34. According to Abbott, private label or store-brand OES—products that contain the same ingredients as Pedialyte OES—comprises "roughly 30 percent of dollar sales." *Id.* These store brands, Abbott further alleges, commonly use the phrase "Compare to Pedialyte" to allow customers to identify the comparable product. *See id.* ¶¶ 129, 131. Examples of private label, ready-to-drink OES referenced in the Amended Complaint are shown below (*see* Hallerman Decl., Ex. A[1] ):

_____

[1] The Court may consider these images in connection with this motion because they are "materials that are necessarily embraced by the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (affirming grant of Rule 12(c) motion).



According to Abbott, the roughly remaining ten percent share of the ready-to-drink OES market is comprised of various "branded" products. *Id.* ¶¶ 34, 68. REVITALYTE-branded OES is one such product. *Id.* ¶ 131.

## B. Revitalyte and its REVITALYTE-branded Products

Founded in 2017 by three friends and University of Minnesota alumni, Revitalyte sells a ready-to-drink OES under its federally registered mark, REVITALYTE, in different flavors and sizes. Am. Compl. Ex. 1 (Dkt. No. 22-1) ¶¶ 15–16. While in college, Revitalyte's co-founders would drink Pedialyte OES to alleviate hangover symptoms. *Id.* ¶¶ 5–6. Pedialyte OES is sold on the baby aisle of grocery stores and other retailers, which made the purchase of the product to remedy hangover symptoms awkward and embarrassing. *Id.* ¶ 6. Revitalyte's co-founders came up with an idea for a ready-to-drink OES marketed to adults as end users and sold in stores close to beer, wine, or liquor. *Id.* ¶ 13. Revitalyte located a manufacturer of private-label OES products with the same ingredients as Pedialyte Classic and began production. *Id.* ¶¶ 18, 29.

Revitalyte began selling its REVITALYTE-branded OES in one-liter, rectangular plastic bottles in 2018. *Id.* ¶ 18. Images of Revitalyte's first three products, whose appearance has remained unchanged since their launch, are below (*id.*; Am. Compl. ¶ 86):



Like numerous store-brand products comparable to Pedialyte OES, Revitalyte has used "Compare to Pedialyte" on its one-liter bottles. In 2021, Revitalyte began selling a fourth flavor in a one-liter bottle, which also used the phrase "Compare to Pedialyte." Am. Compl. ¶¶ 89, 91; *id.* Ex. 1 ¶ 29. An image of that product, which also bears the REVITALYTE mark, is shown below:



Each of these products include text on the back label disclaiming any affiliation with Abbott or Pedialyte. *See* Leonard Decl. Ex. A.

More recently, Revitalyte began selling OES in 20 oz. bottles without the phrase "Compare to Pedialyte," as shown below (Am. Compl. ¶ 93):



Revitalyte has advertised and promoted its product in various channels, including on social media and its website. *Id.* ¶¶ 114, 122.; *id.* Ex. 1 ¶¶ 18, 28. In its marketing, Revitalyte has used irreverent, "crass" humor and played on the fact that Pedialyte, a known hangover remedy for adults, is found in the baby aisle of grocery stores and other retailers. *See* Am. Compl. ¶¶ 12, 166, 168; *id.* Ex. 1 ¶¶ 28, 114.

**C.    This Litigation**

On May 24, 2023, Abbott filed its original complaint alleging that Revitalyte had infringed and diluted Abbott's trade dress and PEDIALYTE mark in violation of the federal Lanham Act and Minnesota law. Dkt. No. 1. Abbott seeks, among other things, an award of Revitalyte's profits "since its inception," as well as costs and attorney's fees. *Id.*

Prayer for Relief; Am. Compl. Prayer for Relief. Before Abbott filed suit, Revitalyte did

not know that Abbott objected to the sale and advertising of its product.

On September 1, 2023, Abbott filed an Amended Complaint to include allegations

regarding Revitalyte's 20 oz. products. Dkt. No. 22. Abbott's Amended Complaint alleges

that Abbott owns unregistered trade dress for Pedialyte OES and a registered trademark for

PEDIALYTE and that Revitalyte's products infringe and dilute that trade dress and

trademark in violation of the federal Lanham Act and Minnesota law. *See generally id.*

Specifically, Abbott claims that Revitalyte's products infringe and dilute Abbott's

purported trade dress rights in the "overall look and feel" of its Pedialyte OES in violation

of 15 U.S.C. § 1125 and Minnesota law. Am. Compl. ¶¶ 170–177, 190–203. Abbott also

contends that Revitalyte's use of the phrase "Compare to Pedialyte" and other isolated

references to Pedialyte infringe and dilute Abbott's federally registered PEDIALYTE mark

in violation of 15 U.S.C. §§ 1114, 1125, and Minnesota law. *Id.* ¶¶ 178–182, 190–203.

Abbott does **not** allege that Revitalyte's federally registered REVITALYTE mark infringes

or dilutes Abbott's PEDIALYTE mark. *See generally id.*

On September 15, 2023, Revitalyte filed an Answer to the Amended Complaint,

denying liability and the salient allegations. Dkt. No. 25. The parties have engaged in

ongoing settlement negotiations and participated in a settlement conference with

Magistrate Judge Schultz without success. Dkt. Nos. 28, 33, 34, 45.

## ARGUMENT

A party may move for judgment on the pleadings after the pleadings are closed, so

long as it moves early enough not to delay trial. Fed. R. Civ. P. 12(c). "As a general rule,

a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss." *Ortiz v. Ferrellgas Partners, L.P. (In re Pre-Filled Propane Antitrust Litig.)*, 893 F.3d 1047, 1056 (8th Cir. 2018). Thus, for purposes of this motion, the Court accepts as true the well-pleaded facts alleged in Abbott's Amended Complaint and grants all reasonable inferences in its favor, determining whether it pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court need not accept "mere conclusory statements," "'naked assertions devoid of 'further factual enhancement,'" or "legal conclusion[s] couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2008) (quoting *Twombly*, 550 U.S. at 557). Whether a complaint states a plausible claim for relief requires the court to "draw on its judicial experience and common sense." *Id.* at 679. The Court should grant Revitalyte's motion and enter judgment in favor or Revitalyte.

## I.    Abbott's Trade Dress Infringement and Dilution Claims Fail.

Abbott seeks to enforce trade dress rights in the "overall look and feel" of its bottles of PEDIALYTE-branded OES (the "Pedialyte Trade Dress"). It defines its trade dress as having the following features: (1) a transparent, plastic, rectangular, one-liter bottle with rounded corners,  gently sloped "shoulders," and two "ribs" running the circumference of the bottle; (2) a shrink-wrapped, screw-on cap; (3) a wraparound label bearing the name "Pedialyte" in large letters located between the bottle's "ribs"; and (4) brightly colored liquids.[2] *See* Am. Compl. ¶¶ 54, 57, 59.

---

[2] Abbott refers to a "more muted two-toned palette" of the wraparound label when describing its trade dress. *See, e.g.*, Am. Compl. ¶ 54. Not all of the bottles which Abbott

8

To prevail on its claim of trade dress infringement, Abbott must show that its purported "trade dress is distinctive and nonfunctional and that the trade dress's imitation would result in a likelihood of confusion to consumers regarding its source." *Pocket Plus, LLC v. Pike Brands, LLC*, 53 F.4th 425, 432 (8th Cir. 2022) (citation omitted). For its trade dress dilution claim, Abbott must show that its purported trade dress is nonfunctional, as well as show that its trade dress is famous and Revitalyte's product is likely to "harm the reputation" associated with that trade dress. *See* 15 U.S.C. § 1125(c)(1), 2(C).

The Court should dismiss these claims. Abbott has not and cannot allege facts sufficient to show that its unregistered trade dress is nonfunctional, a requirement of both its infringement and dilution claims. Abbott's trade dress dilution claim fails for the additional and independent reason that Abbott has not and cannot plead facts sufficient to show that its trade dress is famous.

### A.    The Pedialyte Trade Dress is Functional and Thus Invalid.

A product design or feature is functional and cannot be protected as trade dress "if it is essential to the use or purpose of the article or if it affects the cost or quality of the

---

accuses Revitalyte of infringing—namely, Pedialyte Advanced Care Plus and Pedialyte Sport—have a "muted" label. *See id.* ¶¶ 55, 93. Courts have dismissed trade dress claims where products purportedly encompassed by plaintiff's trade dress definition did not include all of the defined elements. *See, e.g., Nat'l Lighting Co. v. Bridge Metal Industries, LLC*, 601 F. Supp. 556, 562 (S.D.N.Y. 2009). Others have disregarded elements not found in all plaintiff's products. *See, e.g., Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 547 (S.D.N.Y. 2003). Viewing the Amended Complaint in the light most favorable to Abbott, Revitalyte has disregarded the "more muted two-toned palette" for purposes of this motion.

article." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 30 (2001). As the

Supreme Court explained:

> The functionality doctrine prevents trademark law, which seeks to promote
> competition by protecting a firm's reputation, from instead inhibiting
> legitimate competition by allowing a producer to control a useful product
> feature. It is the province of patent law, not trademark law, to encourage
> invention by granting inventors a monopoly over new product designs or
> functions for a limited time, after which competitors are free to use the
> innovation. If a product's functional features could be used as trademarks,
> however, a monopoly over such features could be obtained without regard to
> whether they qualify as patents and could be extended forever (because
> trademarks may be renewed in perpetuity).

*Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164–65 (1995).

Because the Pedialyte Trade Dress is not registered with the U.S. Patent &

Trademark Office, Abbott must plead plausible facts sufficient to overcome the "statutory

presumption" that its trade dress is functional. *TrafFix*, 542 U.S. at 30; *see* 15 U.S.C. §

1125(a)(3). With respect to the Pedialyte Trade Dress as a whole and each of its constituent

elements—(1) a transparent, plastic, rectangular, one-liter bottle with rounded corners,

gently sloped "shoulders," and two "ribs" running the circumference of the bottle; (2) a

shrink-wrapped, screw-on cap; (3) a wraparound label bearing the name "Pedialyte" in

large letters located between the bottle's "ribs"; and (4) brightly colored liquids—Abbott

cannot do so.

About thirty years ago, Abbott obtained a utility patent, U.S. Patent No. 5,217,737,

entitled "Plastic Containers Capable of Surviving Sterilization" (the "'737 Patent").

Hallerman Decl. Ex. B. Though conspicuously absent from the Amended Complaint, the

Court may take judicial notice of the '737 Patent in deciding this motion. *See, e.g., Zean v.*

10

*Fairview Health Servs.,* 858 F.3d 520, 528 (8th Cir. 2017) (affirming dismissal—court may

consider items subject to judicial notice on a Rule 12 motion)*; Anderson v. Kimberly-Clark*

*Corp.*, 570 F. App'x 927, 932 n.3. (Fed. Cir. 2014) ("It is [] well-established that a court

may take judicial notice of patents or patent applications.").

Utility patents are "excellent cheat sheets in assessing functionality of an asserted

trade dress because any design claimed in a patent is supposed to be useful." *Flexible Steel*

*Lacing Company v. Conveyor Accessories, Inc.*, 955 F.3d 632, 646 (7th Cir. 2020)

(quotations omitted) (affirming asserted trade dress was functional as matter of law); *see*

35 U.S.C. § 101 (patents awarded only to "new and useful" inventions and improvements).

As the Supreme Court held in *TrafFix*:

> A prior patent . . . has vital significance in resolving the trade dress claim. A
> utility patent is strong evidence that the features therein claimed are
> functional. If trade dress protection is sought for those features the strong
> evidence of functionality based on the previous patent adds great weight to
> the statutory presumption that features are deemed functional until proved
> otherwise by the party seeking trade dress protection. Where the expired
> patent claimed the features in question, one who seeks trade dress protection
> must carry the heavy burden of showing that the feature is not functional, for
> instance by showing that it is merely an ornamental, incidental, or arbitrary
> aspect of the device.

*TrafFix*, 532 U.S. at 29–30. In addition to the claims, the specification and preferred

embodiments in a utility patent also directly bear on whether the asserted trade dress is

functional. *Id.* at 34; *see e.g.*, *In re Becton, Dickinson and Co.*, 675 F.3d 1368, 1373 (Fed.

Cir. 2012) ("*TrafFix* teaches that statements in a patent's specification illuminating the

purpose served by a design may constitute equally strong evidence of functionality.").

Abbott's '737 Patent identifies the problem of a plastic container becoming structurally unsound or distorted after being sterilized. Hallerman Decl. Ex. B, col. 1–2. To solve that problem, Abbott invented a plastic bottle that can expand and contract when the temperature and air pressure of the bottle's contents fluctuated. *Id.* col. 1–2. Abbott touted its invention as "especially advantageous when sterilizing heat sensitive nutritional and pharmaceutical products in which minimizing the thermal degradation of either product nutrition or medical potency is essential." *Id.* col. 3. According to Abbott, "[a]nother coincident benefit is significantly reduced manufacturing costs due to higher sterilizer productivity." *Id.*

**Abbott claims and discloses the Pedialyte bottle in the '737 Patent**, even going so far as to include the below figure to illustrate an embodiment of the invention:



*Id.* Fig-16, Fig-19. Abbott describes this embodiment in its '737 Patent as follows:

12

The container 50 of this embodiment has a main body portion 51 having a substantially **rectangular** cross-sectional profile . . . . A neck portion 52 having an opening 53 therethrough is disposed at one end of the main body portion, and a base portion 54 is disposed at the other end of the main body portion. **A suitable closure (not shown) may be threadably attached** to the neck portion after the desired contents are placed in the container. **The main body portion 51 has grooves therein which extend completely thereabout and function to rigidify the main body portion and increase the panel strength of the container**.

In an exemplary embodiment a plastic container having the configuration [shown above] . . . is intended to contain **one liter** of a liquid product.

*Id.* col. 11 (emphases added). *See, e.g., Schutte Bagclosures, Inc., v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 265–66 (S.D.N.Y. 2016) (finding bag closure functional when embodiment in utility patent looked "strikingly similar" to claimed trade dress), *aff'd*, 699 F. App'x 93 (2d Cir. 2017); *ASICS Corp. v. Target Corp.*, 282 F. Supp. 2d 1020, 1026–31 (D. Minn. 2003) (denying preliminary injunction in trade dress case where claimed trade dress appeared in patent as embodiment of invention).

Claim 5 of Abbott's '737 Patent claims "a retortable plastic container according to claim 1 wherein the container consists of only a single material and a main body portion of the container has a cross-sectional shape . . . which is substantially rectangular."[3] *Id.* claim 5. Claim 11 likewise claims "an assembly according to claim 7 wherein the container consists of only a single material and a main body portion of the container has a cross-sectional shape . . . which is substantially rectangular." *Id.* claim 11. The assembly referred to in Claim 7 is "an assembly comprising (a) a retortable plastic container . . . , (b) a liquid

---

[3] Claim 1 claims a "retortable plastic container capable of being subjected to a peak sterilization temperature in the range of 250°F to 266°F without catastrophic failure," with additional specifications regarding size and construction. *Id.* claim 1.

contained in the container, and (c) a closure attached to the container by means of attachment[.]" *Id.* claim 7.

The claims and specification of the '737 Patent correspond to the bottle Abbott claims as the foundation of its Pedialyte Trade Dress here: **a one-liter, rectangular, plastic bottle** "**with** rounded corners and two **ridges or 'ribs,' which the run the circumference of the bottle** above and below the wrap-around label, which then converge at the product's shrink wrapped **screw-on cap**." Am. Compl. ¶¶ 54–55 (emphases added). The '737 Patent establishes that the bottle, the keystone of the Pedialyte Trade Dress, is functional.

In its Amended Complaint, Abbott ignores its expired utility patent. It attempts to plead facts sufficient to show that its trade dress is non-functional by alleging that OES can be sold in any number of differently shaped bottles. Abbott alleges, for example, that "the OES product category encompasses a wide variety of packtypes" and "[s]terile goods can be efficiently manufactured and sold in virtually any bottle shape." *Id.* ¶¶ 73–74.

Abbott's allegations relating to alternative designs fail to establish non-functionality as a matter of law. The Supreme Court in *TrafFix* repudiated the proposition that trade dress claimed in an expired utility patent could be non-functional if alternative designs were available. 532 U.S. at 32–33. *TrafFix* concerned a trade dress infringement claim based on the plaintiff's dual-spring design which prevented outdoor signs from blowing over in windy conditions and was claimed in an expired utility patent. *Id.* at 25. The Sixth Circuit held that the fact that the trade dress was claimed in the expired utility patent did not render it functional because there were other spring designs available to competitors. *Mktg. Displays, Inc. v. TrafFix, Inc.*, 200 F.3d 929, 939 (6th Cir. 1999).

14

The Supreme Court rejected the Sixth Circuit's reasoning and reversed. "A product feature is functional and cannot serve as a trademark if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *TrafFix*, 532 U.S. at 32 (quoting *Qualitex*, 514 U.S. at 165, and *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n. 10 (1982)). If a product design or feature is functional under this definition, the Supreme Court held that "[t]here is no need . . . , to engage . . . in speculation about other design possibilities, such as using three or four springs which might serve the same purpose. Here, the functionality of the spring design means that competitors need not explore whether other spring juxtapositions might be used." *Id.* at 33–34. Because the plaintiff's expired utility patent established its trade dress was functional as a matter of law, the availability of alternative designs was irrelevant.

The Eighth Circuit and numerous other courts of appeal have followed *TrafFix* and rejected arguments that available alternative designs render an otherwise functional product design or feature non-functional. *Pocket Plus*, 53 F.4th at 434 (vertically-oriented pouch functional because design was essential to its use and affected quality of article—the fact that competitors made horizontally-oriented pouches did not make asserted trade dress non-functional); *see, e.g., CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 662 (4th Cir. 2020) (chicken feeder design functional based on expired utility patent—"Plaintiff's two-sided, L-shaped spokes serve the functional purpose of permitting chickens to exit the feeder easily. Whether or not a three-sided spoke, or some other alternative design, serves the same purpose does not render Plaintiff's engineering-driven L-shaped spoke design arbitrary or non-functional."); *Groeneveld Transp. Efficiency, Inc. v Lubecore Int'l, Inc.*,

730 F.3d 494, 523 (6th Cir. 2013) (grease pump functional—"[T]he issue is not whether Lubecore could have designed a grease pump with a different appearance; the issue is whether Groeneveld's design is essential to the use or purpose of the article or if it affects the cost or quality of the article." (internal quotation omitted)); *Georgia-Pacific Consumer Prods. LP v. Kimberly-Clark Corp.,* 647 F.3d 723, 731 (7th Cir. 2011) (embossed toilet paper design functional based on utility patents—"[T]he design in question does not have to be the only design to be functional . . . . [T]he fact that there are numerous alternative designs does not, on its own, render the design nonfunctional."); *Talking Rain Bev. Co. v. S. Beach Bev. Co.*, 349 F.3d 601, 604 (9th Cir. 2003) (bike bottle design functional— "Talking Rain argues that its trademark design is merely one of a number of possible designs for bike bottles. . . . But under the Supreme Court's decision in *TrafFix*, the mere existence of alternatives does not render a product nonfunctional.").

The same is true here. Abbott's allegations that OES is sold in "a wide variety of packtypes" and "sterile goods can be efficiently manufactured and sold in virtually any bottle shape," Am. Compl. ¶¶ 73–74, cannot show that the bottle claimed in the '737 Patent and now as part of the Pedialyte Trade Dress is non-functional.

The Amended Complaint also asserts that "the configuration of the Pedialyte bottle is not driven by any functional benefit that is necessary for effective marketplace competition," that "there is no practical benefit to the unique Pedialyte bottle shape," "Pedialyte's bottle shape affords no functional benefit whatsoever to competitors," and there is no "functional imperative to imitate the ribs or shoulders of the Pedialyte bottle." *Id.* ¶¶ 73–75. These conclusory allegations contradict Abbott's representations which led

16

to the issuance of its now-expired utility patent. *See, e.g., CTB, Inc.*, 954 F.3d at 667 ("Plaintiff cannot now pivot and claim [the feature] does not perform that function in order to assert its trade dress."); *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1007 (9th Cir. 1998) ("A trademark proponent cannot . . . contradict[] an earlier assertion contained in an expired utility patent that the same shape is functional."). They also fail to satisfy Abbott's burden. *See, e.g.*, *Crafty Prods. v. Fuqing Sanxing Crafts Co.*, 839 F. App'x 95, 98 (9th Cir. 2020) (affirming dismissal of amended complaint under 12(b)(6)— "The district court was not required to accept as true Appellant's legal conclusion that the trade dresses were nonfunctional or the additional conclusory statements offered to support nonfunctionality."); *Eliya, Inc. v. Steven Madden, Ltd.*, 749 F. App'x 43, 47 (2d Cir. 2018) (same—amended complaint "allege[d] no specific facts that plausibly support non-functionality . . . . That shoes exist in [other] styles . . . does not entitle [the plaintiff] to trade dress protection.").

Likewise, Abbott fails to plead sufficient facts to show the remaining elements of its Pedialyte Trade Dress are non-functional. The Amended Complaint asserts that "[m]any components of the trade dress, such as the color scheme of the wrap-around label, the size and placement of the wrap-around label, and the color of the product, are purely aesthetic." Am. Compl. ¶ 72. Not only is this, too, a conclusory allegation, but it is also implausible. The color of the "product"—the liquid inside the bottle—serves to indicate and differentiate product flavors (e.g., purple for grape). *See, e.g., Dippin' Dots, Inc. v. Frosty Bites Distribution, LLC*, 369 F.3d 1197, 1204 (11th Cir. 2004) (affirming district court's finding based on judicial notice that color of ice cream signified its flavor and was thus

17

functional); *Vital Pharmaceuticals, Inc. v. Monster Energy Co.*, 553 F. Supp. 3d 1180, 1222 (S.D. Fla. 2021) (judgment for accused infringer of energy-drink trade dress— "[U]sing colors to distinguish between different flavors serves a useful, non-arbitrary purpose.").

The size and placement of the wrap-around label are also dictated by functional considerations: the label's size is a direct result of the distance between the bottle's ribs— disclosed in Abbott's patent, Hallerman Decl. Ex. B, col. 2 & 11—because it is placed directly between them. This claimed label placement on the transparent, plastic bottle "reveals the bright colors of the various Pedialyte flavors above and below the wrap-around label." Am. Compl. ¶ 54; *see, e.g.*, *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 874 (8th Cir. 1994) (clear packaging functional because it allowed consumers to see contents). The identical placement of wrap-around labels on store-brand or private-label OES products (*see* Hallerman Decl., Ex. A) confirms the label location is "indeed functional and not arbitrary." *Talking Rain Bev. Co.*, 349 F.3d at 603 (common use of feature by third parties showed it was functional). Finally, Abbott altogether fails to allege any facts to show that the shrink-wrapped cap is non-functional. *See id.* ¶¶ 53–56, 71–77. The shrink-wrapped cap—also used by store-brand or private-label OES products (*see* Hallerman Decl., Ex. A)—serves to secure the liquid inside and mitigate any leakage, as well as indicate to consumers whether the bottle has been unsealed or tampered with. *See Talking Rain Bev. Co.*, 349 F.3d at 603.

Abbott attempts to gloss over the functionality of its unregistered trade dress by repeating that it owns rights in the "overall look and feel" of its Pedialyte OES. *See, e.g.*,

Am. Compl. ¶¶ 3, 53, 61, 67, 76. The Court should not be fooled by this "semantic trickery." *Leatherman Tool Group, Inc.* v. *Cooper Industries*, 199 F.3d 1009, 1014 (9th Cir. 1999) (finding "overall appearance" of knife functional because it was "nothing other than the assemblage of functional parts). Particularly in light of the '737 Patent, Abbott did not and cannot meet its burden to allege facts sufficient show that the "overall look and feel" of the Pedialyte Trade Dress or its constituent elements are not functional. *See TrafFix*, 532 U.S. at 25–26 (plaintiff "did not, and cannot, carry the burden of overcoming the strong evidentiary inference of functionality" based on expired patent); *see, e.g.*, *E-Z Dock, Inc. v. Snap Dock, LLC*, Case No. 2:21cv450, 2022 U.S. Dist. LEXIS 163199, at *11 (M.D. Fl. Sept. 9, 2022) (granting 12(c) motion because utility patent established functionality of claimed trade dress). The "overall look and feel" of the Pedialyte Trade Dress is a direct result of the functional features claimed or disclosed in the '737 Patent. The Court should dismiss Count 1 of the Amended Complaint, as well as Counts 3 and 4 to the extent those claims rest on Abbott's purported trade dress.

**B.    Abbott Has Pleaded Itself Out of Court on Its Trade Dress Dilution Claim.**

Abbott's trade dress dilution claim fails for another independent reason. To state such a claim, in addition to pleading sufficient facts to show that its Pedialyte Trade Dress is nonfunctional, Abbott must plead sufficient facts to show that its unregistered Pedialyte Trade Dress is famous and was so before Revitalyte started selling its allegedly dilutive products in 2018. *See* 15 U.S.C. § 1125(c)(1), (4)(A). The Lanham Act defines "famous" as "widely recognized by the general consuming public of the United States as a

designation of source of the goods . . . of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). Because Abbott's Pedialyte Trade Dress includes the registered PEDIALYTE mark, *see, e.g.,* Am. Compl. ¶ 54 ("wrap-around label . . . bears the name Pedialyte"), *id.* ¶ 57 ("wrap-around label . . . with the Pedialyte brand name parallel to the bottom of the bottle"), Abbott must plead sufficient facts to show that its purported trade dress was famous "**separate and apart from**" any fame of its PEDIALYTE mark and was so before Revitalyte began its allegedly dilutive conduct in 2018. *See* 15 U.S.C. § 1125(c)(4)(B) (emphasis added).

Abbott fails to do so. *See* 15 U.S.C. § 1125(c)(2)(A) (factors to consider for fame). For example, while Abbott alleges that its "consumer research has shown more than half of U.S. adult consumers associate the bottle shape alone," Abbott does not allege when this research occurred, let alone **before 2018**. Am. Compl. ¶ 63. Not only do the Amended Complaint's allegations regarding advertising and sales also fail to show that the Pedialyte Trade Dress was famous before 2018, *see, e.g.*, Am. Compl. ¶¶ 35, 50, they also fail to show that the Pedialyte Trade Dress was famous independent of its registered Pedialyte mark because that mark appears on the products and in the advertising, *see, e.g., id.* ¶¶ 57–61.

The Court should dismiss Count 4 of the Amended Complaint as to Abbott's trade dress dilution claim for this additional reason. *See, e.g., Truenorth Cos., L.C. v. Trunorth Warranty Plans of N. Am. LLC*, 292 F. Supp. 3d 864, 870–74 (N.D. Iowa 2018) (granting 12(c) motion on dilution claim).

## II.   Abbott's Claims Based on "Compare to Pedialyte" Fail as a Matter of Law.

Abbott also takes issue with the words "Compare to Pedialyte" on the shrink-

wrapped cap of Revitalyte's bottle.[4] Am. Compl. ¶¶ 112–132. Abbott contends Revitalyte's use of this language constitutes trademark infringement, false designation of origin, and trademark dilution under 15 U.S.C. §§ 1114 and 1125 (Counts 1–2, 4). Am. Compl. ¶¶ 178–195. The Court should dismiss each of these claims because Revitalyte's use of "Compare to Pedialyte" is textbook nominative and non-trademark use.

### A. Abbott's Trademark Infringement and False Designation of Origin Claims Fail as a Matter of Law.

To state claims for trademark infringement and false designation of origin, Abbott must allege sufficient facts to show that the "Compare to Pedialyte" language on the shrink-wrapped cap of the REVITALYTE-branded bottle is likely to cause an appreciable portion of reasonable consumers to believe that Abbott is the source of Revitalyte's products or that Abbott sponsors, approves, or is affiliated with those products. 15 U.S.C. §§ 1114, 1125(a); *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 763 n.3 (8th Cir. 2010) (likelihood of confusion is required for both claims); *Duluth News-Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996) (plaintiff must show "a likelihood of confusion . . . among an appreciable number of ordinary buyers as to the source or association" of defendant's products). Abbott does not and cannot do so.

As Abbott concedes, "compare to" language appears on private label products "to enable customers to identify a comparable branded product." Am. Compl. ¶ 130. Abbott further concedes that the use of "Compare to Pedialyte"—the precise language used by

---

[4] The "Compare to Pedialyte" language has appeared only on Revitalyte's one-liter bottles of OES. *Compare* Am. Compl. ¶¶ 86, 91, *with id.* ¶ 93.

Revitalyte here—is so ubiquitous that a leading market research firm defines a "private label" OES product as one whose bottle says "Compare to Pedialyte." *Id.* ¶ 131. Based on Abbott's own allegations and reasonable inferences drawn from the Amended Complaint, Abbott admits that the use of "Compare to Pedialyte" by other sellers of OES is lawful.

Like those private-label products, Revitalyte's OES "is a competing OES with a similar formula to Pedialyte." *Id.* ¶ 4, *see, e.g.*, *id.* ¶ 131 (referring to Revitalyte's OES as a "competitive product"). Like those products, "Compare to Pedialyte" on Revitalyte's bottle "enables customers to identify a comparable branded product." *Id.* ¶ 130. And like those products, as shown by the placement of its own REVITALYTE mark front and center on the bottle's wraparound label and in larger font than "Compare to Pedialyte," *see id.* ¶¶ 6, 86, 91, Revitalyte does not use this phrase to identify the source of its OES.

Revitalyte's use of "Compare to Pedialyte" on its REVITALYTE-branded products is nominative fair use and thus not actionable as trademark infringement or false designation of origin. Nominative fair use "lies outside the strictures of trademark law . . . because it does not implicate the source-identification function that is the purpose of trademark." *New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992). Nominative fair use occurs "where a defendant has used the plaintiff's mark **to describe the plaintiff's product**, even if the defendant's ultimate goal is to describe [its] own product." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002) (emphasis added). To qualify for nominative fair use, (1) the plaintiff's product must be one not readily identifiable without use of the trademark; (2) only so much of the mark may be used as is reasonably necessary to identify the product; and (3) the user must do nothing in

22

connection with the mark that would suggest sponsorship or endorsement by the plaintiff. *New Kids on the Block*, 971 F.2d at 308.

It would be impossible to identify Abbott's comparable product to consumers without using "Pedialyte," the product's name. *See, e.g.*, *Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361, 379–80 (S.D.N.Y. 2019) (granting 12(b)(6) motion—defendant's use of "Weight Watchers" in advertisements satisfied first element of nominative fair use defense); *Beachbody, LLC v. Universal Nutrients, LLC*, 119 U.S.P.Q.2d 1734, 1736–37 (C.D. Cal. 2016) (same—defendant's use of plaintiff's "Shakeology" on product package). As with other OES products, "Compare to Pedialyte" appears on Revitalyte's shrink-wrapped cap in unstylized, white font. *See, e.g.*, *Beachbody, LLC*, 119 U.S.P.Q2d at 1737 (nominative fair use where defendant did not use "same logo, font, or coloring scheme" as plaintiff's mark). While Abbott alleges that "Pedialyte" "appears on Revitalyte's bottle more often than Defendant's Revitalyte trademark," Am. Compl. ¶ 128, it ignores the prominent placement of the REVITALYTE mark on the wrap-around label, front and center with distinctive lettering and in the largest font anywhere on the product. *See, e.g.*, *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 895 (9th Cir. 2019) (affirming dismissal based on nominative fair use where defendant used plaintiff's trademark repeatedly—"The analysis . . . should focus not on the number of uses of Plaintiff's marks, but on whether Defendants used more of each individual mark than was necessary in terms of font and stylization."). Again, Abbott does **not** allege that the REVITALYTE mark is confusingly similar to its PEDIALYTE mark. *See generally* Am. Compl.

23

Abbott fails to allege sufficient facts to show that "Compare to Pedialyte" on REVITALYTE-branded one-liter bottles is likely to cause an appreciable portion of reasonable consumers to believe that Abbott sold, sponsored, or endorsed Revitalyte's products. Instead, it merely asserts that Revitalyte uses "Compare to Pedialyte" to "capitalize," "trade on," and "infringe[]" the Pedialyte mark. Am. Compl. ¶¶ 132, 137. These allegations are conclusory and implausible.[5] "Compare to" language "essentially beg[s] consumers to distinguish" the products from the trademark owner. *Am. Home Prods. v. Barr Labs*, 656 F. Supp. 1058, 1066, 1069 (D.N.J 1987) (no likelihood of confusion where defendant used "Compare to Advil and Nuprin" sign to advertise its own drug). Together with the conspicuous REVITALYTE mark—which Abbott does **not** contend is infringing—and disclaimers eschewing any affiliation with Abbott or Pedialyte (Leonard Decl. Ex. A), it is not plausible that "Compare to Pedialyte" would confuse reasonable consumers about the source, affiliation, or approval of Revitalyte's products.[6] *See, e.g., Conopco, Inc. v. May Dep't Stores Co.*, 46 F.3d 1556, 1571 (Fed. Cir. 1994) (applying Eighth Circuit law and reversing judgment for plaintiff on trademark infringement claim— "In light of the prominent placement of the [defendants'] logo on the face of [defendants'] product, and the context in which the marks appear, i.e., a 'Compare' statement,

---

[5] Contrary to Abbott's characterization, *see* Am. Compl. ¶ 148, an inquiry into the source of a product "indicates a distinction in the mind of the questioner, rather than confusion." *Duluth News-Tribune v. Mesabi Pub. Co.*, 84 F.3d 1093, 1098 (8th Cir. 1996).

[6] The Court may consider the photographs of the Revitalyte one-liter bottles attached to Mr. Leonard's declaration because they are "necessarily embraced by the pleadings." *Porous Media Corp*, 186 F.3d at 1079; *see, e.g.,* Am. Compl. ¶¶ 86, 91.

24

defendants' use of the [plaintiff's] marks draws a clear distinction between their product and [plaintiff's].")). The Court should dismiss Counts 2 and 3 of the Amended Complaint to the extent they are based on Revitalyte's use of "Compare to Pedialyte."

### B.    Abbott's Trademark Dilution Claim Fails as a Matter of Law.

Abbott's trademark dilution by tarnishment claim based on "Compare to Pedialyte" separately fails for the additional reason that Revitalyte did not use "Pedialyte" as a trademark for Revitalyte's goods. The Lanham Act defines dilution by tarnishment as an "association arising from the similarity between a **mark** or trade name and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C) (emphasis added). A mark is a word or symbol "used to identify and distinguish his or her goods . . . and to indicate the source of the goods[.]" 15 U.S.C. § 1127. Thus, a *prima facie* claim for trademark dilution by tarnishment requires that the defendant use the allegedly dilutive term **as a mark** for its own goods or services. *See Jack Daniel's Props. v. VIP Prods. LLC*, 143 S. Ct. 1578, 1584, 1592 (2023) (because defendant used "Bad Spaniels" as a mark for dog toy, court erred in finding Jack Daniels's dilution claim failed as a matter of law); *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 536 (5th Cir. 2012) (affirming district court's conclusion that dilution claim failed because defendant did not use logo to identify its own goods or services and thus "did not 'use' [owner's] marks (as the [statute] contemplates that term").

Abbott's trademark dilution claim rests solely on Revitalyte's references to *Pedialyte*. *See* Am. Compl. ¶¶ 192. While Abbott alleges that "Pedialyte" appears in Revitalyte's advertising or on the product, *see, e.g.*, *id.* ¶ 5, that is not an allegation that

Revitalyte uses "Pedialyte" **as a mark** for Revitalyte's goods. *See, e.g., Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co.*, 170 F. Supp. 3d 1249, 1269–70 (C.D. Cal. 2016) (granting 12(b)(6) motion because defendants use of plaintiff's mark in advertising "is not the same as alleging that Defendants use Plaintiff's mark . . . as the mark for Defendants' own goods"). Indeed, as Abbott alleges, Revitalyte uses its *REVITALYTE* mark to designate the source of its goods. *See, e.g.*, Am. Compl. ¶ 19 ("Revitalyte is in the business of selling and promoting a competitive OES **called Revitalyte**."); *id.* ¶ 78 ("[Revitalyte] has **one brand:** its eponymous OES, **Revitalyte**[.]") (emphases added).

Because Abbott does not and cannot plausibly plead that Revitalyte uses the PEDIALYTE mark as an indicator of the source of Revitalyte's OES, Abbott's trademark dilution by tarnishment claim fails as a matter of law, and the Court should dismiss that portion of Count 4 of Abbott's Amended Complaint for that additional reason. *See, e.g., Lions Gate Entm't Inc.*, 170 F. Supp. 3d at 1269–70; *Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 373, 390 (E.D. Pa. 2020) (granting 12(b)(6) motion because plaintiff failed to plausibly allege defendant made "trademark use" of term "as is required to state a cognizable Lanham Act claim for trademark dilution"); *Allied Interstate LLC v. Kimmel & Silverman P.C.*, Case No. 12cv4204, 2013 U.S. Dist. LEXIS 113465, at *10–11 (S.D.N.Y. Aug. 12, 2013) (granting 12(c) motion because plaintiff failed to plausibly plead that defendant used plaintiff's mark as a trademark and "conduct described in the Complaint is outside the ambit of the federal dilution cause of action").[7]

---

[7] Abbott's trademark dilution claim also fails because "Compare to Pedialyte" is nominative fair use and not actionable. *See* 15 U.S.C. § 1125(c)(3)(A).

### III.    Abbott's Trademark Claims Based on a Handful of Other References to "Pedialyte" Likewise Fail.

For similar reasons, the Court should also dismiss Abbott's trademark claims related to the handful of other references to "Pedialyte," including an obsolete page of Revitalyte's website, a smattering of retweets from its Twitter account, and a three-year old promotional guide. *See, e.g.*, Am. Compl. ¶¶ 87, 107, 114, 122–127, 150 & Ex. 2. As for the webpage, images of six consumer tweets joking about Pedialyte appeared at the bottom of a page that displayed Revitalyte's REVITALYTE logo at the top, a photo of a REVITALYTE-branded OES, and a paragraph with the headline "Revitalyte was built for adults." Hallerman Decl., Ex. C. Abbott chose not to include any of Revitalyte's branding in its cropped image in the Amended Complaint because Abbott knows that this context is fatal to its claim. *See, e.g.*, *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 948 (8th Cir. 2023) (reversing preliminary injunction where court clearly erred in not considering the actual conditions in which consumers encountered allegedly infringing mark). It is not plausible, and Abbott has failed to allege otherwise, that an appreciable number of ordinary consumers visited Revitalyte's REVITALYTE-branded website, scrolled through REVITALYTE-branded content at the top of the page, and then saw six consumer tweets and somehow believed that "Revitalyte's OES was Pedialyte." Am. Compl. ¶ 115.

Abbott's trademark claims directed to a smattering of third-party tweets containing the word "Pedialyte" that Revitalyte shared or retweeted via its Twitter account over a five-year period fare no better. *Id.* ¶¶ 122–27. Abbott alleges that this conduct "reinforced the false impression that its OES is a version of Pedialyte, rather than a competitor," *id.* ¶ 127,

but it is undisputed that Revitalyte's name appears immediately above each retweeted or quoted tweet, *see, e.g., id.* ¶¶ 122, 123, 126. Abbott fails to allege sufficient facts to show that an appreciable portion of reasonable consumers would be confused by these tweets. *See, e.g.*, *Weight Watchers*, 403 F. Supp. at 380 (granting 12(b)(6) motion—reasonable consumer would not believe defendant was source of Weight Watchers' services based on "Weight Watchers 2.0" or "Weight Watchers for the 21st Century" advertisements where "the advertisements are expressly posted by [defendant], [defendant's] logo appears in each of the advertisements, and [plaintiff] is invoked once in the text").

Nor does Abbott allege facts sufficient to show how isolated references to Pedialyte in Revitalyte's bygone "Revitalyte Promotional Guide 2021" for retailers plausibly caused confusion about the source or affiliation of Revitalyte's products. Am. Compl. ¶¶ 87, 107 & Ex. 2. *See, e.g.*, *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 576 (2d Cir. 1993) ("Retailers are assumed to be more sophisticated buyers and thus less prone to confusion.").

Accordingly, the Court should dismiss Counts 3 and 4 of Abbott's Amended Complaint to the extent they target the above references to Pedialyte. The Court should also dismiss Count 4 as to these references because none of them constituted use of Pedialyte as a mark. *See supra* Section II.B.

## IV.  Because Abbott's Claim for Violation of the Minnesota Deceptive Practices Act Depend Upon Its Federal Claims, the Court Should Dismiss It.

Finally, Abbott contends that Revitalyte's "trademark and trade dress infringement" violates the Minnesota Deceptive Trade Practices Act ("MDTPA"). *See* Am. Compl. ¶ 198. "Claims for deceptive trade practices under Minnesota statute require the same analysis as

claims under the federal Lanham Act." *Rainbow Play Sys. v. GroundScape Techs., LLC*, 364 F. Supp. 2d 1026, 1039 (D. Minn. 2005) (citation omitted) (MDTPA claim failed because it rested on same facts and arguments as failed federal claim). Because Abbott's failed federal claims rest on the same facts and arguments as its MDTPA claim, the Court should dismiss Abbott's MDTPA claim.

## CONCLUSION

For the foregoing reasons, Revitalyte respectfully requests that the Court grant Revitalyte's motion and dismiss Abbott's Amended Complaint with prejudice.

Dated:  March 14, 2024

**MASLON LLP**

By:  */s/ Stephanie M. Laws*
Stephanie M. Laws (#0396174)
225 South Sixth Street, Suite 2900
Minneapolis, MN 55402
Phone: (612) 672-8200
stephanie.laws@maslon.com

-and-

Mary D. Hallerman (*pro hac vice*)
**SNELL & WILMER L.L.P.**
2001 K Street NW
Suite 425 North
Washington, D.C. 20006
Phone:  (202) 908-4262
mhallerman@swlaw.com

29